## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KWAME OTOYUMABOYA HILL,

*Plaintiff,*

vs.

Case No. 16-3062-EFM-DJW

CORIZON HEALTH, INC., et al.,

*Defendants.*

### MEMORANDUM AND ORDER

Plaintiff Kwame Hill brings several claims, arising out of a medical incident in the El Dorado Correctional Facility ("EDCF"), against seven Defendants.  All Defendants seek dismissal of the claims on the basis of res judicata.  Because the Court finds that res judicata is applicable, and for the reasons stated in more detail below, the Court grants Defendants' motions (Docs. 21, 24, and 41).

### I.       Factual and Procedural Background

In May of 2015, Plaintiff Kwame Hill filed a lawsuit in Butler County against six Defendants. These included: Correct Care Solutions, Corizon Health, Inc., Dr. C.G. Harrod, Deanna Morris, HCP Nickelson, and James Heimgartner (Warden at EDCF), in his official and individual capacity.  Plaintiff is incarcerated in the EDCF.  He asserted in his state court lawsuit claims for "medical malpractice and gross negligence, which violates the Kansas Constitution

State of Kansas – Kansas Bill of Rights."   He referenced "§ 1 – equal rights, § 3 –right of peaceable assembly; petition, § 5 – trial by jury, and § 18 justice without delay for injuries suffered in person."

He asserted that he was prescribed Coumadin, a blood thinner, to address a blood clot. He was prescribed this medicine from July 2013 through March 2014 and claims that he was not properly monitored.   In March 2014, he began having severe pains in his abdomen.   He alleges that over the next week, despite urinating and vomiting blood, his medical need was ignored by medical professionals in the prison.   He asserted that over a two-day period in the EDCF infirmary, his pain was excruciating and he did not eat because of the pain.   After passing out, on or around March 16, 2014, Plaintiff was taken to the hospital where he was diagnosed with "acute renal failure and gastrointestinal bleed."

In his state law petition, Plaintiff asserted that the medical professionals committed medical malpractice and were negligent in their duties.   He also alleged that Corizon had a policy to delay and deny proper medical treatment.   In addition, he contended that Warden James Heimgartner and Kansas Department of Corrections ("KDOC") failed to adequately monitor and audit the performance of Corizon Health and its medical staff.   He asserted that the warden and KDOC should have known of these problems and were deliberately indifferent to the serious health care needs of the prisoners.   Plaintiff requested monetary, declaratory, and injunctive relief.

Approximately eight months after Plaintiff's initial petition, Plaintiff filed an "amended complaint" in state court.   He did not allege significantly different facts.   Instead, he stated that the amended complaint was about the "same basic events in the original" and that "all facts relate

back to the original complaint and petition" but that he changed his legal claims to "medical malpractice and gross negligence."[1]

On March 11, 2016,[2] Plaintiff filed a Complaint in this Court. He names seven Defendants: Corizon Health, Inc., Kansas Department of Corrections ("KDOC"), Dr. C. Gordon Harrod, Deanna Morris (L.P.N.), T. Nickelson (APRN), Jarred Watson, and Mary Einerson.[3] He states that he asserts claims under 42 U.S.C. § 1983. Specifically, in Count I of his Complaint, he alleges deliberate indifference and cruel and unusual punishment under the Eighth Amendment. In Count II, he asserts a violation of the privileges and immunities clause of the Fourteenth Amendment. In Count III, he asserts violations of the Fourteenth Amendment as well as "§ 1 equal rights, § 9 cruel or unusual punishment, and § 18 justice without delay under the Kansas Constitution or Kansas Bill of Rights."[4]

The underlying factual basis for his claims is that Plaintiff was prescribed Coumadin, a blood thinner, for a blood clot in his leg in August 2013. He was on this medication until March 2014. Dr. Harrod allegedly increased the dosage over this seven-month period but did not monitor the medicine. On March 7, 2014, Plaintiff began to feel ill and experienced "severe or excruciating pain." He went to sick call, and APRN Nickelson and LPN Morris saw him. He alleges that they failed to give him adequate medical care and failed to diagnose his condition.

---

[1] It is unclear why Plaintiff stated that he changed his legal claims to medical malpractice and gross negligence because he previously asserted those claims in his petition.

[2] At that time, Plaintiff's case was actively ongoing in the Butler County district court. One dismissal order by the state court had already been entered, and over the course of the next couple of months, another dismissal order was entered. It appears that the case is currently on appeal to the Kansas Court of Appeals.

[3] He also named James Heimgartner, but Heimgartner was dismissed from the case on June 27, 2016.

[4] He mentions in his factual statement some other "claims" including: equal rights, right of peaceable assembly; petition, trial by jury, and no cruel and unusual punishment.

Plaintiff was severely ill for the next two days and went back to sick call on March 10. Nickelson and Morris again saw him but failed to send him to the emergency room or hospital. On March 12, Plaintiff vomited blood in his cell and urinated blood.  An officer called Corizon Health staff, and Morris told the officer to have Plaintiff urinate in a cup but staff never showed up for the cup.   On March 13, Morris had Plaintiff taken to the infirmary in a wheelchair. Corizon Health staff, including Dr. Harrod, Nickelson, Morris, and RN Einerson, implemented "the policy and custom to delay and deny [sending] sick and ill convicts to the emergency room and hospital."

During the seven days that Plaintiff was severely ill, he could not eat because of the excruciating pain and he missed several meals.  Watson, team manager in charge of security staff officers in EDCF, informed Plaintiff that if he continued his refusal to eat, Plaintiff would be placed on "hunger strike status."  Watson allegedly ignored Plaintiff's medical need.

On March 15, Plaintiff was sent to the emergency room in El Dorado and was given a catheterization.  He was then sent to St. Francis Hospital Via Christi in Wichita, Kansas.  He was in the intensive care unit for three days and was diagnosed with severe anemia hemoperitoneum. Plaintiff lost several units of blood, almost bled to death, and his internal organs were damaged. After Plaintiff's stay in the ICU, he was released to a private hospital room for three more days.

From June 2014 through April 2015, Plaintiff attended sick call because of "pain in his penis" and Corizon Health staff drug their feet in sending Plaintiff to follow-up appointments. After March 2014, Defendants Corizon Health or Einerson failed to send Plaintiff to see outside specialists.

Plaintiff alleges that Dr. Harrod is liable for the failure to send Plaintiff to the emergency room and Dr. Harrod's conduct constitutes deliberate indifference. He alleges that Defendants

Nickelson and Morris knew of the substantial risk of serious harm posed by Plaintiff's illness. Plaintiff also states that Defendant Watson knew Plaintiff was severely ill. In addition, he contends that Defendant Einerson failed to answer Plaintiff's grievance in a timely manner and she helped implement Corizon Health's custom and policy to delay and deny sending Plaintiff to specialists. Finally, Plaintiff alleges that Defendant Corizon Health's medical staff violated his constitutional rights by ignoring Plaintiff's severe medical needs.

Plaintiff seeks three million dollars in compensatory and punitive damages from both Corizon Health and KDOC. He also seeks damages of $250,000 from every other named Defendant. In addition, he seeks a declaratory judgment, injunctive relief and costs.

After Plaintiff filed his Complaint, the Court ordered KDOC to prepare a *Martinez* Report[5] because it found that proper processing of Plaintiff's claims could not be achieved without additional information. KDOC filed this report on August 8, 2016. In this report, KDOC asserts that Plaintiff's Complaint should be dismissed because his claims are barred by the doctrines of res judicata and collateral estoppel. In addition, KDOC contends that this Court should decline to exercise jurisdiction based upon the doctrine of comity.

All Defendants, through three different motions, now seek dismissal of Plaintiff's claims.

## II.     Legal Standard

There are currently three motions before the Court, and all seek dismissal of Plaintiff's action on the basis of res judicata.[6] Defendants Corizon Health, Einerson, Morris, and Nickelson filed a Motion to Dismiss, but it was previously converted to a Motion for Summary Judgment

---

[5] *See Martinez v. Aaron*, 570 F.2d 317, 318-19 (10th Cir. 1978).

[6] Each party also raises other reasons for dismissal, but res judicata is the dispositive and only defense relevant in this Order.

(Doc. 21).  The Court converted the motion because it stated that matters outside of the pleadings had been presented by Defendants and noted that a *Martinez* report had been filed in the case. The documents attached to Defendant's motion, however, were court documents from Plaintiff's previous state court lawsuit.  Defendants KDOC and Watson filed a Motion to Dismiss (Doc. 24), and Defendant Harrod filed a Motion to Dismiss (Doc. 41).[7]  Thus, there is one motion for summary judgment and two motions to dismiss.

Generally, a court may take judicial notice of pleadings in prior cases without converting a motion to one for summary judgment.[8]  Specifically, a defendant can properly raise the defense of res judicata in a Rule 12(b)(6) motion, and the Court may take judicial notice of the court's own records or public records from other proceedings.[9]  In addition, the filing of a *Martinez* report does not necessarily convert a motion to dismiss into one for summary judgment and "may sometimes be considered part of the pleadings for purposes of Fed. R. Civ. P. 12(b)."[10]  If "the *Martinez* report's description of the policies or procedures remains undisputed after plaintiff has an opportunity to respond," the Court can appropriately consider it as part of the pleadings in deciding a Rule 12(b) motion.[11]

Here, the *Martinez* report directed the Court to Plaintiff's state court lawsuit and several filings in that state court lawsuit.  Plaintiff does not dispute that he filed a state court lawsuit or that these documents are from that lawsuit.  Indeed, the Court can take judicial notice of these

---

[7] Defendant Harrod also attached several documents relating to the state court lawsuit.

[8] *Tal v. Hogan*, 453 F.3d 1244, 1264-65 n.24 (10th Cir. 2006) (citation omitted).

[9] *Id.*; s*ee also Tri-State Truck Ins., Ltd. v. First Nat'l Bank of Wamego*, 931 F. Supp. 2d 1120, 1123 (D. Kan. 2013).

[10] *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991).

[11] *Id.* at 1112-13.

public records from the state court lawsuit.[12]  Thus, the Court will not convert the two additional

Motions to Dismiss (Docs. 24, 41) into one for summary judgment.  The Court takes judicial

notice of the state court filings, and will consider these documents, when deciding Defendants'

Motion for Summary Judgment and Motions to Dismiss.

## III.   Analysis

All Defendants assert that res judicata bars Plaintiff's claims.  Res judicata can include

both claim preclusion or issue preclusion.[13]  However, res judicata is commonly referred to as

claim preclusion, while issue preclusion is referred to as collateral estoppel.[14]   Under Kansas

law, res judicata (or claim preclusion) consists of four elements: (1) the same cause of action or

claim; (2) the same parties; (3) the claims in the current case were or could have been raised in

the prior action; and (4) a final judgment on the merits of the prior action.[15]

With regard to claim preclusion, the term "claim" has been "defined in factual terms so

that the same factual 'transactions' or 'series of connected transactions' is one claim, regardless

of the number of substantive legal theories that may be available to the plaintiff based on those

facts."[16]  Generally, a claim

---

[12] *See Tri-State Truck,* 931 F. Supp. 2d at 1123.

[13] *See In re Application of Fleet for Relief from a Tax Grievance in Shawnee Co.*, 293 Kan. 768, 272 P.3d 583, 589 (2012).

[14] *Id.*

[15] *Winston v. State Dep't of Soc. & Rehab. Servs.,* 274 Kan. 396, 49 P.3d 1274, 1285 (2002); *Tri-State Truck*, 931 F. Supp. 2d at 1133.

[16] *Stanfield v. Osborne Indus., Inc.*, 263 Kan. 388, 949 P.2d 602, 611 (1997) (noting the Tenth Circuit's transactional approach in determining what constitutes a claim when determining the preclusive effect of a federal court decision on a subsequent state court case); *see also Penner v. City of Topeka*, 2011 WL 686159, at *4 (D. Kan. 2011) (stating that "[i]t has been suggested that Kansas would follow the 'transactional approach' for determining whether two lawsuits constitute the same claim or cause of action because that is the approach advocated in the *Restatement (Second) of Judgments* and American Jurisprudence 2d.").

connotes a natural grouping or common nucleus of operative facts.  Among the factors relevant to a determination whether the facts are so woven together as to constitute a single claim are their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes. Though no single factor is determinative, the relevance of trial convenience makes it appropriate to ask how far the witnesses or proofs in the second action would tend to overlap the witnesses or proofs relevant to the first.  If there is a substantial overlap, the second action should ordinarily be held precluded.[17]

"Grounding a second suit on a different substantive legal theory is insufficient by itself to create a new claim for purposes of res judicata when the factors listed above indicate that the two causes of action should have been brought together."[18]

In Plaintiff's first state court lawsuit, he brought claims entitled "medical malpractice and gross negligence, which violated the Kansas Constitution."  In Plaintiff's current federal lawsuit, he asserts claims for cruel and unusual punishment under the Eighth Amendment and a violation under the Fourteenth Amendment.  Although Plaintiff's claims are labeled differently, his theories are based on the same grouping of operative facts.  Plaintiff asserts that he was prescribed Coumadin, a blood thinner, to address a blood clot.  He claims that he was not properly monitored from July 2013 through March 2014 through health professionals and individuals at EDCF.  Plaintiff asserts that Corizon Health (and their staff members) and KDOC (and its employees) have a policy to delay and deny proper medical treatment.  In March 2014, Plaintiff became very ill and ultimately ended up being hospitalized for up to a week.  He argues that his hospitalization and subsequent injuries were due to Defendants' failure to properly monitor him and/or purposeful delay in providing medical treatment.  The two suits share a common nucleus of operative facts and substantially overlap in time, witnesses, and proof.  Thus,

---

[17] *Stanfield*, 949 P.2d at 611 (citing Restatement (Second) of Judgments § 24, Comment b, p. 199).

[18] *Midwest Crane & Rigging, LLC v. Schneider*, 2016 WL 1391805, at *3 (Kan. Ct. App. 2016).

elements one and three have been met because Plaintiff did bring the same claims (although entitled differently) in each suit.[19]

The next res judicata element to consider is whether the parties are the same in this lawsuit and the former.   Defendants Corizon Health, Morris, Nickelson, and Harrod were specifically named in this lawsuit and the previous state court suit.   KDOC was also a defendant in the previous lawsuit, but its inclusion in both lawsuits requires a bit more discussion.   In Plaintiff's original state court petition, he named James Heimgartner, Warden of EDCF, as a defendant.   He sued Heimgartner in his individual and official capacity.[20]   Generally, official capacity suits are "another way of pleading an action against an entity of which an officer is an agent."[21]   "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."[22]   Thus, although KDOC was not officially named (at that time) as a defendant in the first petition, bringing suit against Heimgartner in his official capacity was in reality a suit against the entity, KDOC.   Indeed, in Plaintiff's amended state court petition, he specifically included KDOC as a defendant in the case caption, but did not include Heimgartner.[23]   Thus, it

---

[19] To the extent that Plaintiff did not actually assert a claim in the first lawsuit that he does assert here, element three of res judicata requires "claims that were or *could have been raised*."   *See Cain v. Jacox*, 302 Kan. 431, 354 P.3d 1196, 1199 (2015) (emphasis added); *see also Williams v. Hsbc Bank USA*, 2016 WL 3092187, at *4 (D. Kan. 2016) (stating that claim preclusion "applies to claims that should have been litigated in the first action but were not.").   Here, because Plaintiff's claims arise out of the same nucleus of facts, to the extent that he tries to bring any additional claims, he could have raised those claims in his first lawsuit.

[20] As noted above, Heimgartner was also named as a Defendant in this suit, but he has been dismissed from the case.

[21] *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978)).

[22] *Id.* at 166.

[23] Plaintiff still included allegations against Heimgartner.

appears that KDOC was a defendant in the previous lawsuit. Accordingly, five of the seven current Defendants were named in the prior lawsuit.

Plaintiff includes two additional defendants in this case. For purposes of res judicata, the parties are the same "when they are in privity with one another."[24] "Before privity can be invoked to satisfy the 'same party' element of res judicata, there must be a showing that 'the parties in the two actions are really and substantially in interest the same.' "[25] Employees, particularly when sued in their official capacity, are generally considered to be in privity with their employer.[26] In addition, "[w]hen an action is brought against an employer as well as one or more employees in their official or representative capacity, the claims against the employees merge with the claim against the employer."[27]

Plaintiff includes Jarred Watson, Unit Team Manager of Administrative Segregation in EDCF, as a defendant. He states that Watson was acting under the color of state law. Thus, he is suing him in his official capacity and as noted above, this suit is in all respects a suit against the entity, KDOC. Because KDOC was a defendant in the previous lawsuit, by virtue of naming Heimgartner in his official capacity or by specifically naming KDOC in the amended complaint, there is an identity of the parties with respect to Watson.

---

[24] *Cain*, 354 P.3d at 1200.

[25] *Id.* at 1201 (citing *Lowell Staats Mining Co., Inc. v. Philadelphia Elec. Co.*, 878 F.2d 1271, 1275 (10th Cir. 1989)).

[26] *See Lowell Staats*, 878 F.2d at 1276 (determining for res judicata purposes that that the defendant employee had been acting in his capacity as an agent of his employer and thus he was in privity with the employer which precluded the subsequent suit against the defendant employee); *Midwest Crane*, 2016 WL 1391805, at *7 (finding for purposes of res judicata that the defendant employees were in privity with their employer and stating that "an employer (principal) is liable for all acts of his or her employees if they are committed while the employee is acting in the execution of his [or her] authority and within the course of his [or her] employment, or with a view to the furtherance of his [or her] employer's business, and not for a purpose personal to the employee.") (internal quotation marks and citation omitted).

[27] *White v. Midwest Office Tech., Inc.*, 979 F. Supp. 1354, 1356 (D. Kan. 1997).

Plaintiff also includes Mary Einerson, RN Director of Nursing for Corizon Health, as an additional defendant.  He claims that Einerson, as supervisor of Corizon, had the ability to offer training and states that such authority occurred because of the contract between Corizon and KDOC.[28]  Thus, Plaintiff appears to be suing Einerson in her official or representative capacity of Corizon, and the claims against her would merge with the claim against Corizon.  Because Corizon was a defendant in the prior state lawsuit, there is also an identity of the parties with respect to Einerson.  In sum, the second element of res judicata, identity of the parties, is met in this case.

The last element of res judicata requires a final judgment on the merits of the prior action.  The Butler County district court dismissed Plaintiff's previous action for being factually deficient and for failure to state a claim.  Pursuant to K.S.A. § 60-241(b), "[u]nless the dismissal order states otherwise, a dismissal under this paragraph and any dismissal not under this section, except one for lack of jurisdiction, improper venue or failure to join a party . . . operates as an adjudication on the merits."[29]  Thus, the last element of res judicata has been met.

In sum, all elements of res judicata have been met.  There is (1) the same cause of action or claim; (2) the same parties; (3) the claims in the current case were or could have been raised in the prior action; and (4) a final judgment on the merits of the prior action.  Accordingly, Plaintiff's claims are barred by res judicata.

---

[28] Plaintiff also checked a box that Einerson was "acting under the color of state law."

[29] Even though the case appears to be on appeal, the pendency of an appeal does not alter the res judicata effect.  *See State v. Wright*, 2009 WL 205224, at **3-4 (Kan. Ct. App. 2009) (noting that the district court's denial constituted a final judgment notwithstanding that an appeal was pending); *see also Phelps v. Hamilton*, 122 F.3d 1309, 1318 (10th Cir. 1997) (stating that "the Kansas courts have adopted the now-majority view regarding the pendency of appeals which provides that the fact that an appeal is pending in a case does not generally vitiate the res judicata effect of a judgment.") (citations omitted).

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Doc. 21) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss (Doc. 24) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Harrod's Motion to Dismiss (Doc. 41) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Appoint Counsel and/or Motion to Stay Proceedings (Doc. 56) is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

Dated this 30th day of March, 2017.


ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE